(No. 24363.—

FLOYD D. BABCOCK *et al.* Appellants, *vs.* SAM L. NUDELMAN, Director of Finance, *et al.* Appellees.

*Opinion filed December 22, 1937.*

FARTHING, C. J., and STONE, J., dissenting.

GEORGE E. DRACH, and LOWELL D. RYAN, for appellants.

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs (appellants here) filed their complaint in the circuit court of Sangamon county praying for an injunction to restrain the Director of Finance and the Attorney

General of the State from enforcing rule 32 of the Department of Finance, under which the State sought to levy and collect the retailers' occupation tax from them, the plaintiffs, and others similarly situated, who were engaged in the practice of optometry. This rule was promulgated by the department in accordance with the provisions of the Retailers' Occupation Tax act entitled, "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption." (Ill. Rev. Stat. 1937, p. 2722.) Plaintiffs take the position that they are licensed under "An act in relation to the regulation of the practice of optometry," (Ill. Rev. Stat. 1937, p. 2020,) and are, therefore, not engaged in the business of selling tangible personal property within the meaning of the provisions of the Retailers' Occupation Tax act. A motion of defendants to dismiss the complaint was allowed, plaintiffs elected to abide by their pleading and a decree was entered dismissing their complaint for the want of equity. We are asked to review the decree.

Optometry is defined by Webster's New International Dictionary (2d ed.) unabridged as: "1. Measurement of the range of vision; also, loosely, measure of other visual powers. 2. Hence, scientific examination of the eyes for the purpose of prescribing glasses, etc., to correct defects, without the use of drugs." The practice of optometry is defined by section 2 of the act in force in Illinois, already referred to, as including "(a) The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms, or ocular exercises; (b) The employment of objective or subjective mechanical means to determine the accommodative or refractive states of the human eye or the range or power of vision of the human eye; (c) The prescription or adoption without the use of drugs, medicines or surgery, of lenses, prisms, or ocular exercises to correct defects or abnormal

conditions of the human eye or to adjust the human eye to the conditions of a special occupation." Section 3 exempts the following persons, firms and corporations from the operation of the act: "(a) Persons authorized under the laws of this State to practice medicine and surgery; (b) Persons, firms and corporations who sell eyeglasses or spectacles in a store, shop, or other permanently established place of business on prescription from persons authorized under the laws of this State to practice either optometry or medicine or surgery; (c) Persons, firms and corporations who manufacture or deal in eyeglasses or spectacles in a store, shop or other permanently established place of business and who neither practice, nor attempt to practice optometry."

From a review of these provisions it appears that the legislature has attempted to set off and provide for a calling or profession distinct in itself, and to separate it from the purely mercantile or retail agencies engaged in the business of selling eyeglasses or spectacles in a permanently located place of wholesale or retail business. Section 3-a of the act further provides that the Department of Registration and Education shall, among other things, conduct (1) examinations to ascertain the qualifications and fitness of applicants for certificates of registration as registered optometrists and (2) hearings on proceedings to revoke or refuse renewals of such licenses or certificates previously issued. Provision is also made for the payment of a fee for a certificate as a registered optometrist, and section 14 declares that the practice of optometry, without a certificate of registration, shall constitute a misdemeanor punishable, upon conviction, by a fine. It is apparent at the outset that the evident intention of the legislature was to create a recognized class in the nature of a profession similar to persons practicing medicine, surgery or dentistry, and to elevate the calling to that of a profession or skilled occupation.

Rule 32, previously mentioned, provides as follows: "Optometrists and oculists are not liable for retailers' occupation tax with respect to receipts from professional services rendered, such as examination and refraction of the eyes or ocular care and treatment. However, if optometrists or oculists also act as opticians, or sell spectacles, eyeglasses, lenses, frames, or other tangible personal property to users or consumers, they incur liability for tax with respect to receipts from such sales." A reading of this rule narrows the inquiry to the sole question as to whether the fact that in the carrying on of the practice of optometry the one receiving the service, if called upon to purchase eyeglasses, frames or other tangibles from the optometrist, participates in a sale of tangibles which are taxable under the Retailers' Occupation Tax act. If it becomes necessary for a physician to furnish medicine or surgical dressings in effecting a cure, he certainly does not thereby come within the designation of those engaged in a calling which would result in the imposition of a retail tax. The same reasoning applies to dentists even though that calling requires the furnishing of certain inlays, fills, or crowns, or even false teeth, if necessary to a completion of the dental service. The exemption of these two professions from the operation of the Retailers' Occupation Tax act is recognized by special rule 32 of the Department of Finance. The main object and purpose of optometry is to furnish service to one requiring a correction of vision. It is not a craft or a trade but a personal professional calling in which a reputation is built up because of the efficiency of the service rendered. The requirements of the statute in regard to this particular calling insist upon a good moral character on the part of the applicant, graduation from an approved school of optometry and the passing of satisfactory examinations and tests as to educational fitness. None of these requisites are necessary for one engaged in the business of the retail sales of tangibles. The lenses furnished are the

result of skilled mechanical grinding and preparation. The ocular examination of the recipient of the service demands a high degree of skill. These things are the main objectives. While it is true that frames are furnished and their price considered in the ultimate attainment of the purpose, it is purely incidental to the main object sought to be accomplished. There is no reason why the optometrists may not adapt old frames to new lenses if requested. The furnishing of new frames does not alter the character of the calling nor convert a profession into a trade.

The Retailers' Occupation Tax act must receive a reasonable interpretation and, as a tax measure, it should be strictly construed. (*People's Gas Light Co.* v. *Ames,* 359 Ill. 152.) The furnishing of tangible personal property such as eyeglasses to a purchaser, under the circumstances of this case, is merely incidental to the services rendered, and the person making the transfer is exempt from the operation of the taxing statute. (*Burgess Co.* v. *Ames,* 359 Ill. 427.) Similarly, the furnishing of lenses, after examination, without frames would be an incomplete performance and the supplying of these tangibles is necessary to a completion of the finished act.

It is our opinion that the legislature has sought to create a calling distinct in its character from that of the retailer who sells similar tangibles in the pursuit of a trade, and the optometrist engaged solely in his professional occupation is not subject to the tax.

The decree of the circuit court is therefore reversed and the cause is remanded to that court, with directions to overrule the motion to dismiss.

*Reversed and remanded, with directions.*

Mr. CHIEF JUSTICE FARTHING, dissenting:

For reasons similar to those stated in my dissent in *Herlihy Mid-Continent Co.* v. *Nudelman, Director of Finance,* (*ante,* p. 600,) I dissent.

Mr. JUSTICE STONE, also dissenting.