## COEFFICIENT FOUNDATION v. KENNEDY et al.

No. 14694.

Court of Civil Appeals of Texas.

Fort Worth.

June 15, 1945.

Rawlings, Sayers & Scurlock and Nelson Scurlock, all of Fort Worth, for appellants.

B. Y. Cummings, A. W. Dawson and Joe J. Johnson, all of Fort Worth, for appellee.

SPEER, Justice.

Mavourene Kennedy joined by her husband sued Coefficient Foundation, a corporation, and P. E. Glenn, his wife Mrs. P. E. (Lillian) Glenn, James McLeod, and his wife Mrs. James McLeod, J. J. Cole and his wife Mrs. J. J. Cole, and Earl Glenn, to recover damages for wrongful eviction from a room in a rooming house, for damages and loss of personal property and for exemplary damages.

All defendants answered by general denial. Trial was to the court without a jury; judgment was entered in plaintiffs' favor for $415 against all defendants, jointly and severally and against the individual defendants (besides the corporation) for $250 as exemplary damages. All defendants except James McLeod have appealed.

It is apparent that this case and a companion case, that of La Una Edwards, against the same defendants, were tried at one hearing; they were filed the same day; there is only one statement of facts but its caption bears the style and numbers of both and duplicate findings of fact and conclusions of law were filed in the respective cases, yet separate judgments were entered. No question is raised by either party in this respect, and we shall so consider the two appeals. The fact findings and conclusions are substantially as follows:

On February 23, 1944, P. E. Glenn, Mrs. P. E. Glenn, Earl Glenn, Mrs. James McLeod, and Mrs. J. J. Cole applied for and procured a charter under the name of "Coefficient Foundation"; that the purpose clause in said charter is, "The support of charitable, educational and religious undertakings specially in the following respects and particulars"; The support of institutions which have for their purpose belief and teaching the tenets of any established church or religion, whether of Judaism, Roman or Greek Catholicism, Protestant Christianity or other theistic belief. To make contributions to students' loan funds, to aid worthy persons, to support and contribute to all worthy religious, charitable, benevolent, educational and philanthropic corporations, which may be found by the board of directors to be worthy; to erect and maintain a building or house for charitable, benevolent, educational and philanthropic work; to erect and maintain a building to office the employees; to pay operating expenses of the corporation; to build, keep, and maintain hospitals, clinics

and schools for charitable and benevolent purposes; to acquire property by gift, devise or bequest, such as is convenient and proper to carry out the purposes of the corporation. There are many other provisions of the charter found by the court, not necessary to mention. In fact the court copied the charter in his fact findings and it covers several pages in the record.

Court further found as a fact that the corporation and the parties who procured its charter had never exercised the privileges or performed the duties and purposes for which the corporation was formed. That the property purported to be owned by the corporation has at all times been operated by the defendants who applied for the charter, as a rooming house; that P. E. Glenn was agent for the corporation for the purpose of collecting rents and his wife was the business manager for the corporation and the property it controlled. That the defendants, P. E. Glenn, Mrs. P. E. Glenn, Earl Glenn, Mrs. James McLeod, and Mrs. J. J. Cole are the persons who applied for and obtained the charter for the corporation, and are the same persons who managed and operated Coefficient Foundation for the purpose of a rooming house, and no other persons were interested in either the corporation or the rooming house.

There was a further finding that the plaintiffs, Mrs. Kennedy and Miss Edwards were born and reared at Center, Texas, and had lived in Fort Worth about two years and were employed at an Aircraft Corporation at a wage of $10 per day each; that both are high class young women of culture and refinement. Miss Edwards is a single woman, and Mrs. Kennedy is married, and her husband is in England with the Armed Forces; that in July, 1944, the two ladies rented a room from P. E. Glenn acting as agent, in a building or rooming house owned by Coefficient Foundation; they paid their rentals regularly and occupied the rooms as their residence; that on September 6, 1944, when the young ladies returned from their work to their rooms, they found the doors and windows securely locked and found two notes on their door, reading as follows:

"Eviction Notice.

"Miss La Una Edwards

"Miss Marovina Kennedy

"You have been evicted for non-payment of rent; you neither paid nor tendered payment either in cash or money order.

"You will find your belongings at the Fort Worth Warehouse & Storage Co.

"When you rejected the offer of a weeks free rent and stated you were going to continue to occupy the rooms regardless, it then made your rent due on the usual due date.

"Notice:

"The doors and windows of these rooms have been securely locked and fastened.

"Any one who tampers with these locks or windows or enters these premises will be prosecuted for housebreaking and trespassing."

That the above notices were posted on the doors of plaintiffs' room by P. E. Glenn and Mrs. P. E. Glenn, acting for themselves and as rental agent and manager, respectively, for the corporation and all other defendants and independently of the purpose clause of the charter of the corporation; that at the time of the eviction of plaintiffs they were both financially able to pay their rentals, and offered to pay, but defendants refused to accept it. Neither Miss Edwards nor Mrs. Kennedy had been guilty of any misconduct; that by reason of the unlawful eviction they were both shamed and humiliated and damaged and their property was damaged. That no effort was made by defendants to evict plaintiffs through legal procedure. That when evicted Miss Edwards owned a pair of ear-rings of the value of $10 which were never returned to her; her cedar chest was scratched and broken to her damage $15; her clothing damaged and required $15 expense to recondition them; she lost one and a half days from her work to her damage of $15 and was shamed and humiliated to the extent of $250; that at the time of the unlawful eviction and the removal of her property, Mrs. Kennedy lost $150 which she never recovered; that she lost a day and a half from her work to her damage of $15, and she was shamed and humiliated to her damage in the sum of $250. That said eviction and removal of plaintiffs' property was done by defendants recklessly and unlawfully and without regard for the rights of plaintiffs.

The conclusions of law were to the effect that the eviction was wrongful and illegal and that under the facts each of the plaintiffs had suffered damages for shame and humiliation in the sum of $250, and they were each entitled to recover for the value of the property that was damaged or

lost, and that each of them were entitled to recover exemplary damages in the sum of $250.

The charter of the corporation was in evidence, and it provides for no capital stock and, of course, no assets are shown.

The first three points relied upon are so closely related that they may be discussed together. They are substantially: (1) There are no pleadings upon which plaintiff could recover for a wrongful eviction, (2) No evidence of shame and humiliation of plaintiff on account of the manner in which she was evicted, and (3) Error in awarding plaintiff damages for $250 for shame and humiliation resulting from the notice of eviction because there was no evidence that such notice had been published.

 To read plaintiffs' petition is to refute the first contention that there were no pleadings to justify the award. It is certain Mrs. Kennedy was evicted in the manner found by the court; not by physical violence or expulsion, but by the means shown by the court's findings, which are not disputed by defendants. The means employed were rather crude but very effective. See 27 Tex.Jur. 286, Sec. 163. Mrs. Kennedy did not testify in so many words that she was shamed and humiliated by the fact that she was thus evicted from the premises. Court found from the evidence that Mrs. Kennedy had paid her rent, was financially able to continue to do so, and would have paid it if Mr. Glenn would have accepted it; that she is a high-class, law-abiding young woman of culture, refinement, good character, and reputation; that she is the wife of a soldier in the U. S. Army, now located in England. Mrs. Kennedy testified fully about what happened with respect to the notices of eviction on her door and the removal of her belongings. She said the acts of defendants in evicting her caused inconveniences and made it difficult for her to find a place to live. It is not an unnatural situation for one who has been evicted from one residence under a charge of failure to pay rent to be embarrassed to explain the conditions under which she in fact was evicted. Such a situation would be emphasized by one who is of such high character and culture as Mrs. Kennedy as found by the court. There were some letters in evidence written by Mrs. Glenn to the parents of Mrs. Kennedy concerning Mrs. Kennedy and her roommate, in which serious criticisms were

made of their character; the letters were sent by the parents to Mrs. Kennedy; the letters contained many derogatory accusations which defendants did not attempt to prove, except by Mrs. Glenn; apparently the court gave no credence to this part of her testimony. Mrs. Kennedy said that to be charged with the false accusations made by Mrs. Glenn in those letters embarrassed and humiliated her. Viewing the whole record as we do, we cannot say there is no testimony of probative force to support the fact findings by the court in the respects shown. The remaining point in this group asserts error in entering judgment for Mrs. Kennedy because there was no evidence that the notice of eviction had been "published." Defendants (the appellants here) cite and rely upon a line of decisions relating to the necessity of the "publication" of a libel or slander, before recovery is allowed. This is not a suit for libel and we know of no rule requiring "publication" of such notices as were placed on plaintiffs' door for eviction purposes before recovery can be had for the wrongful eviction and the embarrassment incident thereto. However there is evidence in the record that there were carpenters, plumbers and other laborers making repairs in the house, and that there were at least two other roomers in the house during the time the notices were on the door. We see no merit in the contention.

 The effect of points 4, 5, and 6 is that the court erred in entering judgment against the individual defendants other than the corporation. Aside from the defendants P. E. Glenn and Mrs. P. E. Glenn, the other individual defendants, namely, James McLeod, Mrs. James McLeod, Earl Glenn, J. J. Cole and Mrs. J. J. Cole apparently had nothing to do with the wrongs complained of by plaintiff and for which she seeks redress. It is elementary that the subscribers to stock of a corporation or those who procure the charter, may not be held personally responsible for the wrongs of the corporation under the facts and circumstances of this case. There are certain exceptions to this general rule. The rule with the exceptions may be found in 10 Tex.Jur. 797, 798, Sec. 168, and cases cited in footnote. Among the cited cases is that of Belo et al. v. Fuller, 84 Tex. 450, 19 S.W. 616, 31 Am.St.Rep. 75. This early case announces the rule adhered to in this state. That was a suit for libel alleged to

have been published by Belo & Co., a corporation, and suit was instituted against the corporation and the stockholders. The principle is announced that if a corporation, by its wrongful acts, injures an individual, it is liable in damages and those who aid and assist in such wrongful act are equally responsible. It was held that the liability of those who aided and assisted in the wrong did not grow out of the fact that they were stockholders in the corporation, but springs from their active agency in producing and circulating the libel. In the case at bar, the liability of Mr. and Mrs. Glenn is upon the theory that they, as agent and manager of the property of the corporation, and by their acts, perpetrated the wrong upon Mrs. Kennedy, while acting in the course of their respective agencies. We conclude that Earl Glenn, Mr. and Mrs. James McLeod, and Mr. and Mrs. J. J. Cole cannot be held to respond in damages in this case; but we note that James McLeod did not appeal from the judgment against him, all of which will require a reformation of the judgment in this case.

The seventh point raises a most interesting question; it is there urged that error was committed by the court in rendering judgment against "Coefficient Foundation," which is a charity corporation, for the wrongful acts of Mr. and Mrs. Glenn. In Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749, it was held that public policy demands that charity corporations be held immune from liability for the torts of their agents in the absence of negligence in the selection of such agents. In the instant case the corporation's charter shows that it had no capital stock and, of course, did not disclose any assets. The charter provides how it could acquire property, but nothing here indicates that such equity as it had in the rooming house was acquired by virtue of the charter provisions; in fact the court found on competent testimony that the corporation had never functioned under the purpose clause of its charter. The purposes of the corporation were extensive and evince a very ambitious undertaking. It was not running a rooming house under any provision of its charter. In so far as its acts in this case are concerned, it was entirely outside of the realm of charity or benevolences in any respect. The evidence is conclusive that it was operating a rooming house for profit;

it had for quite a time been receiving the profits arising from the enterprise. We are not inclined to give the "Coefficient Foundation" the benefits vouchsafed to charitable institutions when it has never engaged in charity or benevolences of any kind in so far as the record shows, but is engaged in operating a rooming house for profit just as would any individual or group of owners engaged in the same business. For the reasons stated we overrule the point of error.

Eighth and Ninth points assign error in rendering judgment in favor of Mrs. Kennedy for $150 for the loss of that amount of money claimed by her to have been in the cedar chest removed by the Glenns, because it is asserted that the overwhelming weight of the evidence does not support the court's finding and further because the finding that she lost that amount of money was based upon an inference predicated upon another inference. We are unable to agree with appellants in these respects. The evidence shows with reasonable certainty that the money was in the chest when wrongfully removed by the Glenns and was not there when she recovered the chest from the storage company. It is true that Mrs. Glenn testified that she did not remove the money, and that she did not open the chest. But when we read her entire testimony, we may visualize her attitude and mannerisms while on the stand, all of which were obvious to the trial court, and the court apparently gave her numerous assertions little weight; this was the exclusive privilege of the court sitting as trier of the facts. We overrule the points.

Based upon what we have observed above, we affirm the judgment of the trial court as against the defendants Coefficient Foundation, a corporation, and against P. E. Glenn and Mrs. P. E. Glenn and leave the judgment undisturbed as against James McLeod, who did not appeal from the judgment against him. This ruling applies also to that part of the judgment for exemplary damages against the defendants last above named which does not include the corporation. We reverse the judgment of the trial court wherein judgment was entered either for compensatory or exemplary damages against the defendants Earl Glenn, Mrs. James McLeod, J. J. Cole and Mrs. J. J. Cole and here ren-

der judgment in their favor that plaintiffs take nothing against either of them, and that they recover their costs herein incurred.

Judgment affirmed in part, left undisturbed in part and reversed and rendered in part.