L. Klein, Appellant, v. Bernard Rosen, Appellee.

Gen. No. 43,349.

Heard in the third division of

376

this court for the first district at the February term, 1945. 
 Opinion filed December 20,
1945. Released for publication January 8, 1946.

Isaac B. Lipson, of Chicago, for appellant.

Julius H. Selinger, of Chicago, for appellee.

Mr. Justice Burke delivered the opinion of the court.

On July 19, 1944 L. Klein, a corporation filed a verified complaint in chancery in the circuit court of Cook county against Bernard Rosen alleging that throughout its corporate existence it had been engaged in the business of operating a retail store on South Halsted street, near Fourteenth street in Chicago, consisting of a six-story fireproof building, housing numerous departments of sale; that for more than 15 years plaintiff had been engaged in the business of selling optical goods; that throughout that period it sold and was then selling eyeglasses and spectacles on prescription from persons authorized under the laws of Illinois to practice optometry or medicine and surgery; that in the department selling optical goods, eyeglasses and spectacles it employed defendant for the period from August 23, 1937 until June 24, 1944, at which time he left his employment; that plaintiff kept and maintained a list of purchasers of eyeglasses, spectacles and optical goods, the list consisting of looseleaf cards kept in alphabetical order in a cabinet of drawers located in the department, each card being numbered and being devoted to a single purchaser, containing a history of the purchaser's eye conditions and defects, a statement of the nature and quality of the lenses prescribed for such purchaser or sold to him, the type and size of frame and bridge which had been provided, the price thereof, the style of lens, the size of the eye, the age of the purchaser, his or her address, and all matters of interest in connection with the furnishing of

eyeglasses or spectacles for such purchaser; that the total number of cards in the list was around 5,000; that the amount of sales per annum made "to said purchasers" was from $15,000 to $18,000; that it was a profitable business; that the list of customers has a value of many thousands of dollars to plaintiff; that it could be sold at a very substantial price to other persons engaged in a similar business; that the department for the sale of optical goods, eyeglasses and spectacles was in charge of defendant; that the customers' list was under his direction and control; that during the period of approximately seven years in which he was in control of the department he was in sole control of the list; that a large number of the cards were made out by him or under his direction while he was so employed on a salary from plaintiff; that a blank form of the card comprising the list shows the name of the patient, the card number, the date, age, data as to the glasses supplied to the patient, the price charged, the person who examined the patient; that attached to each card was a stub bearing the same number as the card, the stub being delivered to the customer, the stub showing the name of the customer, the date when the glasses were promised, the price, the amount of deposit and the balance; and that stub also bore the following notation: "L. Klein, Optical Dept. Specialists in Prescribing, Grinding and Fitting Glasses."

The complaint further avers that on or about June 12, 1944 defendant informed plaintiff that he was about to terminate his employment; that on Saturday, June 24, 1944 he terminated his employment; that since then he has not been in plaintiff's employ; that on the day he terminated his employment he sent by mail to all the customers of plaintiff whose names appear on the list of customers a letter stating that he was "the doctor who fitted you with the glasses you are wearing"; that after many years "as the eye

doctor at L. Klein, I have now gone into private practice for myself''; that he enjoyed caring for the customer in the past and thought the customer would be interested in knowing his new location; that the customer's eyes had not been examined in some time and he suggested that the customer drop in at his new office and receive a thorough check-up without charge; that the offer was extended to any member of the customer's family, and that the same facilities and services he had ''always tried to render'' would be continued, ''if not exceeded''; that he enclosed a courtesy card permitting any member of the customer's family to take advantage of the ''free eye examination''; and that at the head of the letter was a portrait of defendant. Plaintiff further alleges that the list of customers was accumulated by it at great expense; that the data contained therein makes it possible to serve the requirements of each customer without a repetition or examination of the requirements of such customer, the history of the eye condition or the prescriptions previously employed by him, and enables the possessor of the list to serve the needs of the customer at a lower expense and to furnish the requirements of the customer at a lower price; that the list contains confidential and valuable information; that the possession of the list solely by plaintiff maintains the good will of the plaintiff in its business with the customers mentioned on the list and is the strongest single factor which holds the patronage of the customers; that the defendant, while in the plaintiff's employ, surreptitiously and wrongfully copied the list of customers and the cards constituting the same, together with the data thereon; that the data on the list is voluminous and could not be memorized; that the letters sent out by defendant to all the customers on the list were prepared and made ready for mailing by defendant prior to the time he terminated his employment with plaintiff on Saturday, June 24, 1944, and

were promptly mailed so they were received by the customers on the list the following Monday morning; that by reason of this wrongful act defendant was able to begin business practically without any expenditure of money or labor in building up a patronage and obtaining customers, and was wrongfully placed in an unfair position to compete, particularly with the business of plaintiff; that due to the fact that defendant was in charge of the department he was placed in a position to undermine the business of the plaintiff and appropriate to himself the profitable business which was built up by the plaintiff prior to and during the time when the defendant was in its employ; that a copy of the customers' list is now wrongfully in the possession of defendant and is being wrongfully used; that the use of the list is calculated to inflict great injury on plaintiff's business and damage which is not ascertainable at law; and that the sending out of the letters has resulted in damage to plaintiff and a loss and reduction in plaintiff's trade and has brought profits to the defendant, the amount of which plaintiff is unable to state. Plaintiff prayed for an injunction restraining defendant from making any use of the list or any copy or memorandum of the list; that he be enjoined from sending any further communications to any of the persons on the list; that he be required to return and deliver to plaintiff all copies of the list or any memorandum or record thereof; that he be required to make an accounting showing which, if any, of the customers of the plaintiff to whom defendant sent letters have purchased eyeglasses, spectacles or optical goods from him, the date, nature and amount of such purchases and the cost of the goods sold.

Plaintiff moved for a temporary injunction and by agreement of the parties defendant was restrained from making use of the list of customers who had purchased eyeglasses, spectacles or optical goods from plaintiff, or making use of any copy or record or mem-

orandum of such list until the further order of the court. Defendant moved to dismiss the complaint for want of equity for matters appearing on its face, namely:

"1. Plaintiff is a corporation and as such is prohibited by law from engaging in, practicing or competing with defendant in the profession of optometry. 2. The relief prayed is on its face in violation of the statute and law of this State in that it would enable plaintiff to engage in practice of a profession prohibited by law to corporations. 3. Plaintiff does not come into equity with clean hands in that its sworn complaint states that it is engaged in a profession from which corporations are excluded."

The court having heard argument of counsel, ordered that the temporary injunction be dissolved and that the complaint be dismissed for want of equity. This appeal followed.

Defendant maintains that the complaint and exhibits when read together contain admissions that plaintiff was performing functions which the statute forbids to corporations; that the complaint and exhibits admit that defendant is not competing with plaintiff in its legitimate sphere of trade and commerce, and that plaintiff is engaged in unauthorized practice; that where there are contradictions between allegations and exhibits in a complaint, the exhibits will control; and that equity will grant no injunctive or other relief which will enable a party to engage in unauthorized practice of a profession, or impose a restraint upon one authorized by law to engage in such profession. Plaintiff replies that the defense relied upon is not presented by the motion to dismiss for the reason that the complaint, upon its face, does not show that it violated the statute on optometry, but on the contrary shows that it is exempt from the operation of that statute; that the law of this State is that a customers' list (or an agents' list) is property of the employer

and that the employee is bound not to disclose or use confidential matter which he gathered by reason of his former employment; and that under the statute a corporation may sell spectacles upon the prescription of a registered optometrist though that person may be in the corporation's employ. Neither in his motion to dismiss nor in his brief in this court does defendant challenge plaintiff's position that a customers' list is the property of the employer, and that an employee is bound not to disclose or use confidential matter which he gathered by reason of his former employment. Hence, it is unnecessary to discuss this proposition.

The Act now in effect regulating the practice of optometry was approved on April 19, 1919. It was amended by an Act approved June 28, 1945, subsequent to the entry of the decree in the instant case. Sec. 1 of the Act (par. 90, ch. 91, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 94.01]) provides that ''no person shall practice or attempt to practice optometry, as defined in this Act, without a valid existing certificate of registration as a registered optometrist issued by the Department of Registration and Education.'' Sec. 2 defining the practice of optometry, reads:

''Any one or any combination of the following practices constitutes the practice of optometry: (a) The examination of the human eye, without the use of drugs, medicines or surgery, to ascertain the presence of defects or abnormal conditions which can be corrected by the use of lenses, prisms, or ocular exercises; the employment of objective or subjective means to determine the accommodative or refractive status of the human eye or the range or power of vision of the human eye; (b) The prescription or adaptation; of lenses, prisms, ocular exercises or any means other than the use of drugs, medicine or surgery to correct or alleviate defects or abnormal conditions of the human eye or to adjust the human eye to the condi-

tions of specific occupation or to individual environment. (c) The replacement or duplication of an ophthalmic lens without a prescription from a person authorized under the laws of this State to practice either optometry or medicine and surgery. The provisions of this paragraph shall not be construed to prevent an optical mechanic from doing the merely mechanical work of replacement or duplication of such ophthalmic lens. An ophthalmic lens within the meaning of this Act shall be any lens which has a spherical, cylindrical or prismatic power or value, and is ground pursuant to a prescription.''

The 1945 amendment removed the following paragraph theretofore in sec. 2: ''No registered apprentice may independently practice optometry. A registered apprentice may however, under the immediate personal supervision of a registered optometrist, assist a registered optometrist in the practice of optometry.'' Sec. 3 reads:

''The following persons, firms and corporations are exempt from the operation of this Act: (a) Persons authorized under the laws of this State to practice medicine and surgery; (b) Persons, firms and corporations who shall sell eyeglasses or spectacles in a store, shop or other permanently established place of business on prescription from persons authorized under the laws of this State to practice optometry or medicine and surgery. (c) Persons, firms and corporations who manufacture or deal in eyeglasses or spectacles in a store, shop or other permanently established place of business, and who neither practice nor attempt to practice optometry.''

Sec. 3a grants to the Department of Registration and Education supervision and jurisdiction over the practice of optometry. The functions of the department, among other things, are as follows: 1. To conduct examinations to ascertain the qualifications and fitness

of applicants for certificates of registration as registered optometrists, and pass upon the qualifications of applicants for reciprocal licenses, certificates and authorities. 2. Prescribe rules and regulations for a method of examination of candidates. 3. Prescribe rules and regulations defining what shall constitute a school, college or university or department of a university, or other institution, reputable and in good standing, and to determine the reputability and good standing of a school, college or other institution by reference to a compliance with such rules and regulations provided that no school, college or university, or department of a university or other institution that refuses admittance to applicants, solely on account of race, color or creed shall be considered reputable and in good standing. 4. Establish a standard of preliminary education deemed requisite to admission to a school, college or university, and to require satisfactory proof of the enforcement of such standard by said schools, college and universities. 5. Conduct hearings on proceedings to revoke or refuse renewal of licenses, certificates or authorities of persons applying for registration or registered under the provisions of this Act and to revoke or refuse to renew such licenses or certificates or authorities. Sec. 4, in defining a person qualified to receive a certificate of registration, states that such person shall be at least 21 years of age, of good moral character and temperate habits, free from contagious or infectious diseases, a citizen of the United States and having certain educational requirements. Sec. 7 provides for the issuance of a certificate of registration as a registered optometrist. Sec. 9 provides for the annual renewal of the certificate on payment of a fee. Other sections provide for the refusal, revocation or suspension of the certificate, the procedure thereunder, and for a review by the courts. Prior to the amendment approved on June 28, 1945, sec. 14 of the Act read, (par.

103, ch. 91, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 94.14]) :

"Each of the following constitute a misdemeanor, punishable, upon conviction, by a fine of not less than $25.00 nor more than $200.00: (a) The practice of optometry or an attempt to practice optometry, without a certificate of registration as a registered optometrist. . . . (c) Permitting any person in one's employ, supervision or control, to practice optometry, unless that person has a certificate of registration as a registered optometrist. . . ."

Sec. 14, as amended by the Act approved June 28, 1945, reads, (par. 103, ch. 91, Ill. Rev. Stat. 1945) :

"Any person who shall practice optometry, or offer to practice optometry in this state, without being registered for that purpose, shall be subject to prosecution before any court of competent jurisdiction and shall upon conviction, be fined for the first offense any sum not less than $200.00, nor more than $500.00, and for each subsequent conviction, shall be punished by a fine of not less than $500.00 and not more than $1,000.00, or by punishment in the county jail for not less than six months, nor more than one year, or both so fined and imprisoned in the discretion of the court. Each of the following constitutes a misdemeanor, punishable, upon conviction, in the same manner as practicing optometry without a certificate of registration as aforesaid. (a) The obtaining of, or an attempt to obtain, a certificate of registration, by fraudulent misrepresentation; (b) The making of any wilfully false oath or affirmation whenever an oath or affirmation is required by this Act; (c) The violation of the provisions of Section 8 of this Act. All fines and penalties shall inure to the Department of Registration and Education."

Section 8 (mentioned in sec. 14), provides that every holder of a certificate of registration shall display it

in a conspicuous place "in his principal office, place of business or employment," and that whenever a registered optometrist practices optometry outside of or away from his principal office, place of business or employment, he shall deliver to each patient in his care a certificate of identification. This certificate shall contain his signature, the number and date of his certificate of registration, the post office address of his principal office, place of business or employment, and the date upon which the certificate of identification is delivered to the patient.

The parties are agreed that plaintiff is not authorized to practice optometry. Under clause (b) of sec. 3 plaintiff, in selling eyeglasses or spectacles in its store on prescription from persons authorized to practice either optometry or medicine and surgery, is exempt from the operation of the Act. Defendant calls our attention to paragraph 6 of the complaint, which sets out a blank form of the cards comprising the list, and the statement that attached to each card is a stub bearing the same number as the card, the stub being delivered to each customer, the stub stating: "L. Klein, Optical Dept. Specialists in prescribing, grinding and fitting glasses."

We are of the opinion that under the allegations of the complaint, plaintiff is a corporation as described in clause (b) of sec. 3, and sells eyeglasses or spectacles on prescriptions from persons authorized under the statute to practice optometry, whether such persons or one or more of them are or are not in the employ of plaintiff, and that in selling eyeglasses or spectacles on such prescriptions it is exempt from the operation of the statute. Plaintiff is engaged in a lawful business. Defendant charges that the complaint leads to the conclusion that plaintiff is practicing optometry. In our opinion, the positive allegation that plaintiff was and is selling eyeglasses or spectacles on prescriptions from persons authorized to prac-

tice optometry or medicine and surgery, is not overcome by the language on the card that plaintiff is a specialist in prescribing, grinding and fitting glasses. It is interesting to note that sec. 8 of the Act requires every holder of a certificate of registration to display it in a conspicuous place in his principal office, place of business or employment, and that whenever he is outside of or away from such place he shall deliver to each patient in his care a certificate of identification. The use of the word "employment" indicates that the Act contemplates that licensed optometrists may be employed. Nowhere in the Act is the "employment" limited to licensed optometrists or physicians and surgeons as employers. Sec. 14 of the Act, in effect at the time the instant case was decided, states that permitting any person in one's employ, supervision or control to practice optometry unless that person has a certificate of registration as a registered optometrist, shall constitute a misdemeanor. This language shows that where the person in the employ of another as an optometrist had a certificate of registration as a registered optometrist, there was no violation of the statute by the employer. The amendment of 1945 removes this provision. Sec. 14, as amended, however, calls specific attention to sec. 8, which contains the provision relative to the holder of a certificate displaying it in a conspicuous place in his place of "employment," and is to be read in connection with the entire Act. It is common knowledge that corporations operating department stores as well as copartnerships and individuals employ registered optometrists to examine purchasers' eyes and to prescribe glasses. We assume that the members of the General Assembly possessed this knowledge. Although the Optometry Act has been in operation since 1919 and was amended in 1945, the Legislature has not inhibited the employment of optometrists by corporations, copartnerships or individuals who are in the business of selling eyeglasses or spectacles.

The Optometry Act, among other things, licenses persons who have qualified themselves for the purpose of rendering services as optometrists, and allows optical stores to remain in the business of selling eyeglasses or spectacles, but protects the public by requiring that their corrective lenses shall be prescribed by a qualified person who is licensed and registered. These two purposes are not inconsistent. Under the optometry section a person may be selling services and, incidental thereto, eyeglasses, and under the exemption section a person, firm or corporation in an established business may be engaged primarily in selling eyeglasses or spectacles, in which case the glasses must be furnished on the prescription of a qualified optometrist or physician and surgeon.

In the recent case of *Babcock v. Nudelman*, 367 Ill. 626, which involved the right of the State to levy and collect the Retailers' Occupation Tax from persons engaged in the practice of optometry, the court decided, in effect, that where an optometrist also furnishes glasses, the furnishing of the glasses is incidental to the service of optometry and is therefore not subject to the sales tax. Plaintiff states that the sale of spectacles by it upon a prescription furnished by its employee is clearly subject to the sales tax; that a person goes to its store to buy eyeglasses; and that the selling of these is a matter of trade and business in such a case, whether the type or kind of corrective lens is determined by a person employed by plaintiff or by some person who is engaged in independent business. A licensed optometrist may prescribe lenses and may also sell the lenses. He may do either or both. He is not required to have a license when he merely sells the lenses. A corporation, copartnership or individual may sell eyeglasses or spectacles on prescriptions, whether or not such prescriptions are given by a registered optometrist in the employ of the seller.

We have studied the cases of *People v. Peoples Stock Yards State Bank*, 344 Ill. 462; *Dr. Allison,*

*Dentist, Inc. v. Allison,* 360 Ill. 638; and *People v. United Medical Service, Inc.,* 362 Ill. 442. These cases involve the practice of law, medicine and dentistry. In the case of *Silver v. Lansburgh & Bro.,* (111 F. (2d) 518), 128 A. L. R. 582, the United States Court of Appeals for the District of Columbia affirmed a decree of the district court denying relief in a suit to restrain certain corporations from engaging in the practice of optometry. The court said (583):

"Appellants, in the main, base their claim for injunctive relief upon the ground that optometry is a learned profession, the very nature of which, they say, prohibits the practitioner thereof from any affiliation or connection with a corporation or nonoptometrist. . . . The court found that optometry is a mechanical art which requires skill and a knowledge of the use of certain mechanical instruments and appliances designed to measure and record the errors and deviations from the normal found in the human eye, but is not a learned profession comparable to law, medicine and theology, and that, though certain standards of education are prescribed by the statute and by rules of the board created under it, optometry is not a part of medicine. The court was, therefore, of the opinion that neither defendant is engaged in the practice of optometry contrary to the statute. In the recent case of *United States v. American Medical Association* (decided March 4, 1940), 72 App. D. C. 12, 110 F. (2d) 703, we pointed out that the practice of medicine in the District of Columbia is subject to licensing and regulation, and we stated that, in our opinion, it might not lawfully be subjected to commercialization and exploitation. We cited many authorities holding that a corporation engages unlawfully in the practice of medicine when it employs licensed physicians to treat patients, itself receives the fee, and the profit object is its main purpose, the arrangement being such as to divide the physician's loyalty and destroy the well

recognized confidential relation of doctor and patient. This brings us, then, to consider whether this rule applies to the practice of optometry. . . . It is unlawful for any person to engage in the practice until he shall have complied with the requirements of the Act. These requirements are that he must be a person over twenty-one years of age, of good moral character, who has had a primary education, equivalent to a two-years' course in a first-class high school and who is a graduate of a school of optometry in good standing, and who shall pass an examination consisting of tests in practical optics, theoretic optometry, anatomy and physiology, and such pathology as may be applied to optometry, practical optometry, theoretic and physiologic optics. Upon compliance with these conditions, the applicant is entitled to a license, but the Act provides that this shall not include the right to use any title or any word or abbreviation indicating that he is engaged in the practice of medicine, surgery, or the treatment of the eye, or the diagnosis of diseases of or injuries to the eye, or the writing or issuing of prescriptions for the obtaining of drugs or medicine in any form for the treatment or examination of the eye. Many states have similar or nearly similar statutes, but their courts have disagreed on whether optometry is a learned profession. We have considered the cases and are of the opinion the best considered adopt the view that optometry is not 'one of the learned professions.' Optometry is said by a well known writer on the subject not to be a part of medicine, 'either by inheritance, basic principles, development or practice.' It is 'an applied arm of optical science resting upon the work and discoveries of physicists and opticians through the ages down to modern times. It does not treat the eye, whether in health or disease, but adapts the light waves which enter the eye, in accordance with optical principles so as to produce focused and single vision with the least abnormal

exertion on the part of the eye.' Arrington's History of Optometry, p. 24 (1929). The District of Columbia statute neither requires nor contemplates that an optometrist shall be a graduate physician or that he shall, like an oculist, diagnose or treat diseases of the eye. In actual practice, the function which he performs is in measuring the refractional abnormalities of the eye and prescribing, and sometimes grinding the lenses to correct them. The distinction between oculists and optometrists is succinctly stated by the New Jersey Supreme Court in *New Jersey State Board v. Kresge Company*, 113 N. J. L. 287, 174 A. 353, 357; 'Oculists and ophthalmologists pursue a calling quite distinct from that of optometrists. The first has relation to the practice of medicine and surgery in the treatment of diseases of the eye, and the second to the measurement of the powers of vision, and the adaptation of lenses for the aid thereof.' And in the following cases the difference in methods of practice is described and explained. *Georgia State Bd. v. Friedmans' Jewelers*, 183 Ga. 669, 189 SE 238; *State v. Gus Blass Co.*, 193 Ark. 1159, 105 S. W. (2d) 853; *Dvorine, et al. v. Castelberg Jewelry Corp.*, 170 Md. 661, 185 A. 562. The cited cases base the distinction mainly upon the difference in the required degree of learning and training and, based on this difference, hold that where the statute itself does not specifically control, the reasons for preventing the practice of law and medicine through corporations do not apply to optometry. But we prefer to rest our view upon the broader distinction arising out of the traditional relationship between physician and patient. and attorney and client, a relationship which does not exist in the practice of optometry. The professional service required of the former, of its very nature, creates a relationship of trust and confidence. Both in the case of the physician and the lawyer, the person seeking his services must break down the barriers of reserve which otherwise

serve to protect him and deliberately reveal to his professional adviser secrets of physical or mental disability or secrets of business of the most intimate nature. These necessary disclosures create the personal relationship which cannot exist between patient or client and a profit-seeking corporation. The universal recognition of this immediate, unbroken, and confidential association between doctor and lawyer and those who engage their services early created and still justifies the rule that their allegiance must be wholeheartedly to the patient or the client, and not to another. Nothing of this nature applies to the practice of optometry. In this view, we may very well concede that optometry is a profession, as that term is now colloquially used, but that fact is not enough to bring the rule into effect. There is no more reason to prohibit a corporation, organized for the purpose, from employing licensed optometrists, then there is to prohibit similar employment of accountants, architects, or engineers. We know of no instance in which the right in any of those cases has ever been challenged, though universally all are deemed professions. We find nothing in the statute to indicate that Congress intended to prohibit corporations from employing licensed optometrists. Its primary purpose was to insure that the service would be rendered by competent and licensed persons and thereby to protect the public from inexpertness. That purpose may be fully accomplished, though the person rendering the service is employed by a corporation.''

Following the last mentioned case (128 A. L. R. 582, 585) appears an annotation reviewing the reported cases on the right of a corporation or individual, not licensed, to practice optometry through a licensed employee.

In *Babcock v. Nudelman*, 367 Ill. 626, our Supreme Court stated that in passing the optometry Act

the evident intention of the legislature was "to create a recognized class in the nature of a profession similar to persons practicing medicine, surgery or dentistry, and to elevate the calling to that of a profession or skilled occupation." In the *Silver* case the court recognized that optometry is a profession, as the term is now colloquially used, but that such fact is not enough to bring optometrists within the rules of law applicable to lawyers and physicians. The view of the learned justices of our Supreme Court and of the United States Court of Appeals for the District of Columbia are harmonious. Although there are cases to the contrary, we are of the opinion that the better view is expressed in the *Silver* case by the United States Court of Appeals for the District of Columbia. In testing the sufficiency of a motion to dismiss for want of equity appearing on the face of the complaint, we accept as true the material allegations of ultimate fact and reasonable inferences therefrom. We are of the opinion that the complaint was not vulnerable to the motion to dismiss. Therefore, the decree of the circuit court of Cook county is reversed and the cause remanded for further proceedings in due course.

*Decree reversed and cause remanded with directions.*

KILEY, P. J., and LEWE, J., concur.