SOUTHERN METHODIST UNIVERSITY V. J. B. CLAYTON.

No. 8146. Decided December 15, 1943.
Rehearing overruled January 26, 1944.
(176 S. W., 2d Series, 749.)

*Sawnie R. Aldredge* and *Julian B. Mastin,* both of Dallas, for petitioner.

The Southern Methodist University, being an institution of higher learning, benevolent and charitable in character, with no capital stock or stockholders, and being a charitable institution such as is exempt by law from liability for damages for the negligent act of its employees, and the plantiff having abandoned, in the trial court, his allegation of negligence on the part of said university in employing and retaining its employee, Morgan, there is no issue for the jury upon which the university can be held liable for plaintiff's injury. Lightfoot v. Poindexter, 199 S. W. 1152; Texas Cent. R. R. Co. v. Zumwalt, 103 Texas 603, 132 S. W. 113; Davis v. Gulf, C. & S. F. Ry. Co., 196 S. W. 603.

*Harris & Palmer, John C. Harris* and *Philip I. Palmer,* all of Dallas,. for respondent.

A charitable institution would be liable in damages to a stranger, who received no benefits from the charitable trust, under the doctrine of respondent superior, upon proof of negligence proximate cause and damages. Horden v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L. R. S. (N. S.) 62, 139 Am. St. Rep. 889; Hewett v. Woman's Hospital Aid Assn., 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496; 10 Am. Jur. 702.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

During a football game between the teams of petitioner, Southern Methodist University, ánd Texas A. & M. College, at Dallas, on November 9, 1940, a temporary bleacher collapsed. This is a suit by respondent, J. B. Clayton, to recover damages for injuries sustained by his wife, who was seated in the bleacher when it fell. After Clayton rested his case the trial court sustained the university's motion for an instructed verdict. That action was reversed by the Court of Civil Appeals and the cause was remanded for a new trial. 172 S. W. (2d) 197.

There is no dispute as to the material facts. Southern Methodist University is incorporated under the laws of Texas as

an institution of higher education. It is owned and maintained by the Methodist Church and is governed by a board of trustees elected by subordinate bodies of the church. It has no capital stock and nobody can receive any pecuniary profit from its operation. In addition to a college of arts and sciences, it conducts schools of theology, law, engineering, music, business and the like. It also has a department of athletics, supervised by a professor of physical education, and every student is required to take some form of physical training. Football is one of them, but it is not self-sustaining. Over a period of fifteen years this department showed a net loss of $55,000 to the university's general fund. Besides moneys received from athletic contests, this general fund is constituted by tuition and fees collected from students and by income realized from gifts and endowments. From it all expenses of the university's operation are paid.

One L. B. Morgan had been employed by the university for about fifteen years with the duty, among others, of supervising the football field. That included the erection of temporary bleachers when it was expected that the permanent stands would not seat the spectators. The stand that fell and injured Mrs. Clayton was finished about five days before the game in question. Morgan directed the work.

Clayton alleged that the university was negligent (1) in permitting this stand to be crowded beyond its normal capacity; (2) in failing sufficiently to brace it; and (3) in constructing it of old and defective material. He alleged, further, that it was negligent in keeping Morgan in its employ, on the theory that he was incompetent. However, during the trial Clayton formally waived this last issue. Hence, the trial court's action in instructing a verdict was a holding that the other three acts of negligence ·charged, if true, did not render the university liable for Mrs. Clayton's injuries.

Because it is devoted to public education without private gain, the university is a charitable institution, despite the fact that it is under the control of a religious denomination and charges tuition. 14 C. J. S., p. 444, sec. 15 a. There is a divergence of opinion in our several American jurisdictions as to the tort liability of such an institution to its beneficiaries or to strangers. Some extend absolute immunity, others recognize a limited liability, while a few hold to the doctrine of respondeat superior. Ibid., p. 544, sec. 75a. Since the limitation generally is based on the theory that it is better that the injured individual go without his damages than that the assets of the charity be

dissipated to pay them, it is sometimes held that liability. exists but that it cannot be enforced by levy of execution on property exclusively devoted to charity purposes. Obviously this holding is to permit the injured party to get the benefit of indemnity insurance carried by the charity. O'Connor v. Boulder Colorado Sanitation Association, 105 Col. 259, 96 Pac. (2d) 835, 133 A. L. R. 819. Sec. 10 Am. Jur., Charities, secs. 140 to 143, inc.; Annotation in 14 A. L. R.., beginning at page 572; and President and Directors of Georgetown College v. Hughes, 130 Fed. (2d) 810, for excellent reviews of the various holdings.

■ It seems definitely established in this state that a charity corporation is liable to an employee for injuries proximately caused by the negligence of its officers, vice principals or agents. Armendarez v. Hotel Dieu (Civ. App.) 145 S. W. 1030; same case, 176 S. W. 181, 210 S. W. 518. On the other hand, it is equally well settled that it is not liable for such injuries to beneficiaries of the charity, provided it is not negligent in hiring or keeping the agent whose negligence proximately causes the injuries. The principle has been applied in several cases where injuries were received by patients in charity hospitals because of the alleged negligence of nurses. See St. Paul's Sanitarium v. Williamson (Civ. App.) 164 S. W. 36 (er. ref.); Barnes v. Providence Sanitarium (Civ. App.) 229 S. W. 588 (er. dism.); Baylor University v. Boyd (Civ. App.) 18 S. W. (2d) 700; Enell et al v. Baptist Hospital (Civ. App.) 45 S. W. (2d) 395 (er. ref.); Steele v. St. Joseph's Hospital (Civ. App.) 60 S. W. (2d) 1083 (er. ref.)

■ Whether this rule is to be extended to strangers to the charity is the question we have to decide. It is contended that since the Claytons were on the university's campus as guests paying to watch a football game, they were strangers to the university's charitable purpose of promoting education and are entitled to damages for the injuries sustained by Mrs. Clayton. Or, as respondent puts it in his brief, "If J. B. Clayton had been a student at the University at the time of the injury, the University would have been liable in damages only if it had been negligent in the hiring of L. B. Morgan. But since it is patently clear that Clayton was not a student and was a stranger to the charities of the institution, its negligence in hiring Morgan becomes of no consequence, if the institution is otherwise found to have been negligent." We do not believe there is any solid ground for such a distinction. No Texas case is cited which supports it, nor have we found any. However, Vermillion v. Woman's College of Due West, 104 S. C. 197, 88 S. E. 649, a

decision by the Supreme Court of South Carolina, is on all fours with this case. There the college gave a musical entertainment in its new auditorium, to which the public was invited for an admission fee of fifty cents each. Plaintiff's intestate was present as a paying guest. While the entertainment was in progress a balcony fell on him, inflicting the injuries from which he died. In an effort to avoid the effect of an earlier decision by that court in Lindler v. Hospital, 98 S. C. 25, 81 S. E. 512, that a charity is not liable for injuries suffered by a beneficiary, Vermillion sought to make the identical distinction that Clayton seeks to make here, that is, that his intestate was not a beneficiary of the charity but was "a stranger, sustaining no relation to the charity, except that of an invited guest upon its premises, who had paid for his right to be there." In overruling it, that court said:

"These differences in the facts of the two cases make no difference in the applicable law, because the exemption of public charities from liability in actions for damages for tort rests not upon the relation of the injured person to the charity, but upon grounds of public policy, which forbids the crippling or destruction of charities which are established for the benefit of the whole public to compensate one or more individual members of the public for injuries inflicted by the negligence of the corporation itself, or of its superior officers or agents, or of its servants or employes. The principle is that, in organized society, the rights of the individual must, in some instances, be subordinated to the public good. It is better for the individual to suffer injury without compensation than for the public to be deprived of the benefit of the charity. The law has always favored and fostered public charities in ways too numerous to mention, because they are most valuable adjuncts of the state in the promotion of many of the purposes for which the state itself exists."

To hold the university liable in damages to Clayton would unquestionably take from it, to the extent of the judgment, fund which would otherwise be devoted to its charity purpose. It would, to that extent, deprive the public of the benefit of the charity. The principle of respondeat superior, if applied to situations like that presented in this case, could result in impairing or destroying the university, in the face of a clear public policy demand that it be preserved. We must agree, therefore, with the holding of the Supreme Court of South Carolina in the Vermillion case, supra, that no liability exists. As said in that case:

"This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of

equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of respondeat superior, which is itself based on reasons of public policy. The injured person has his remedy against the actual wrongdoer. It is said, however, that he may be and often is financially irresponsible. But the answer is that the law does not undertake to provide a solvent defendant for every wrong done. There are many cases of wrongful injury not compensated, because the wrongdoer is insolvent. * * * Questions of public policy must be determined upon consideration of what on the whole will best promote the general welfare."

Public policy considerations have long been heeded by our courts. For example, public policy is the basis of the holding in Paschal v. Acklin, 27 Texas 173, and many other cases, that gifts to public charity are not affected by our constitutional rule against perpetuities. Therefore, we think sound public policy demands that charity corporations be held immune from liability for the torts of their agents, in the absence of negligence in employing or keeping the latter, whether the injured party be a beneficiary of the trust or a stranger to it, since the result to the charity would be the same in either case.

It would serve no good purpose to extend this opinion in a discussion of the authorities holding contrary to our conclusion. We simply do not follow them.

The judgment of the Court of Civil Appeals is reversed and that of the district court is affirmed.

Opinion adopted by the Supreme Court December 15, 1943.

Rehearing overruled January 26, 1944.