**GARRETT et al. v. WAITS BUS LINES, Inc.**

No. 6467.

Court of Civil Appeals of Texas. Texarkana.

March 2, 1950.

Rehearing Denied March 23, 1950.

Mat Davis, Gilmer, Milton Greer Mell, Gilmer, for appellants.

Charles Winkle, Pittsburg, Curtis White, Dallas, for appellee.

LINCOLN, Justice.

The appellants are the surviving wife and minor children of L. E. Garrett, deceased, and brought this suit to recover damages for his death caused by the alleged negligence of the appellee. The trial court sustained special exceptions to the second amended original petition and, the appellants declining to amend, the suit was dismissed. The only point of error is directed to the action of the court in sustaining the appellee's special exceptions.

The amended petition is quite lengthy. We will state its material allegations. The deceased bought and paid for a ticket in Pittsburg, Camp County, to Paris and return for use on the appellee's bus. At that time he was intoxicated from the use of intoxicating liquors and this fact was known to the appellee's ticket agent. The bus had already left Pittsburg, but the ticket agent knew that Garrett would try to overtake the bus and use the ticket for transportation thereon. He overtook the bus at Mt. Pleasant and was admitted as a passenger by the bus driver. It is then alleged that the appellee "became obligated and bound to safely transport the said Garrett in his then known condition to his point of destination * * * and owed to him that degree of care commensurate with his condition."

The bus driver took a bottle of whiskey from Garrett at the time he was accepted as a passenger or shortly thereafter. The bus made its usual stop at Talco, a station between Mt. Pleasant and Paris, and

then proceeded on toward Paris. Shortly after the bus left the station at Talco Garrett left his seat and "started toward the front seat," and requested the driver to give him back his whiskey. The driver stopped the bus immediately, turned around and drove back to the Talco bus station and put Garrett off the bus. At that or at any other time Garrett did not do anything or say anything reasonably calculated to cause the bus driver or any passenger to believe that he was about to create any disturbance. When Garrett was put off the bus the driver offered to return the whiskey but he refused to accept it and the driver pitched it out on the ground and drove off. Garrett picked up the bottle of whiskey and walked away with it. In returning to the station at Talco to put Garrett off, the bus driver drove within thirty or forty feet of the City Hall. The City Marshal and a Deputy Sheriff of Titus County were sitting near the street where the bus was traveling and the driver brought the bus almost to a stop for the purpose of turning Garrett over to the officers "because of his drunken condition and probable danger to himself and to the public." But he did not do so and put him out at the bus station "without any protection or assistance whatsoever, or any provision for his care of safety in his known condition, or any provision for his transportation in safety to his destination or return to his home." It is alleged that the bus driver admitted to the plaintiff "Fadie" Garrett that the reason he started to stop the bus as he passed the City Hall at Talco was because he was afraid Garrett would get on U. S. Highway No. 271 and get run over; that the City Hall is about 150 or 200 yards from Highway 271 and is about half way between the highway and bus station where Garrett was put off. It is further alleged that the bus driver saw two men between Highway 271 and the bus station, and "has admitted he knew them to be officers, and whom he knew would have placed the said Garrett in confinement and safe-keeping, if he had stopped and turned the said Garrett over to them." The petition then makes the following allegations:

"12. That the highway traveled by said bus going through Talco from Pittsburg to Paris is U. S. Highway No. 271 and is a much traveled highway. Said bus driver knew, or should have known, that said Highway No. 271 was a much traveled highway and knew that the said L. E. Garrett was so intoxicated that he was mentally and physically unable to protect himself from the dangers thereof or of appreciating the danger incurred and produced by the acts of said bus driver in unlawfully ejecting the said L. E. Garrett as a passenger from said bus under the circumstances at said place. That said bus driver knew, or should have known, that the said L. E. Garrett was incapable of knowing or understanding the consequences of the danger that confronted him under the circumstances, and any person of ordinary prudence should have known that giving to him more whiskey in his then condition would materially increase his mental and physical incapacity and would materially increase the possibility of his being injured.

"13. That said bus driver in putting the said L. E. Garrett off of said bus was an unlawful ejection of a passenger because said bus driver accepted him as a passenger in his drunken condition and the said L. E. Garrett was guilty of no act or conduct which would either justify, warrant, or excuse such unlawful ejection of a passenger under the circumstances, and said bus driver failed to provide for the safety of the said L. E. Garrett at the time of such unlawful ejection.

"14. That at the time the said L. E. Garrett was unlawfully ejected from said bus it was about 8:00 P. M. at night on said 8th day of April, 1948, and the bus driver knew that he was unlawfully ejecting him at an isolated and unsafe place because of the conditions and actions hereinabove alleged and for the further reasons that the bus station at Talco affords no accommodations to passengers, or prospective passengers, except a place to buy a ticket. That on said date, the owner and operator of a drug store at Talco was the agent of said defendant for the purpose of selling tickets in connection with the operation of

his drug store and didn't even offer as much as a place for a passenger or prospective passenger, to sit down.

"15. That said bus driver knew, or should have known, that there was no other mode of public transportation out of said town of Talco that night, either to the place of destination of the said L. E. Garrett, or to return to his home. That said bus driver knew, or should have known, as a matter of law, that the said L. E. Garrett was too drunk to request or receive hotel or other public accommodations if such accommodations were available in the town of Talco, without friends or acquaintances, to assist him. That under the circumstances such unlawful ejection was at an isolated and unsafe place and without the protection required of such defendants under the circumstances.

"16. That said bus driver, knew, or should have known, and any person of ordinary prudence could have reasonably anticipated that the said L. E. Garrett might receive some injury in view of his known condition and the circumstances surrounding such unlawful ejection at such an isolated place so far from his point of destination or his home. That said bus driver has admitted knowledge of such danger, as hereinabove alleged."

It is then alleged that about 9 o'clock that night Garrett was struck and killed by some kind or character of motor vehicle unknown to the appellants and operated by an unknown person, about five or six miles out of the town of Talco on U. S. Highway No. 271, toward Mt. Pleasant.

Following these allegations the appellants then set up specific grounds of negligence, all of which are involved in the allegations and statements above set forth.

It is alleged that each and all of the acts of negligence were the proximate cause of the injuries to Garrett resulting in his death, from which the alleged damages arose.

The appellee specially excepted to the second amended original petition as a whole for the following reasons:

"a. Because it shows on its face that the defendant is not guilty of any acts of commission or omission or of any negligence proximately causing the injuries and damages complained of.

"b. Because said petition shows on its face that the injuries and damages complained of were too remote and unforseeable to hold the defendant liable therefor.

"c. Because said petition shows on its face that the injuries and damages complained of were caused by a new and independent agency with which defendant had no connection and over which it had no control.

"d. Because said petition shows on its face that L. E. Garrett the deceased, was guilty of negligence as a matter of law which caused or contributed to cause the injuries and damages complained of."

We may assume from the appellant's petition that the appellee violated its duty to Garrett when the bus driver put him off the bus at Talco station, after it had accepted him as a passenger in his drunken condition. But this suit is not for damages for wrongfully putting him off the bus. It is for damages for injuries resulting in death under Art. 4671 et seq., R.S. of Texas, Vernon's Ann.Civ.St. art. 4671 et seq., allegedly resulting from negligence of the appellee. Was such negligence the proximate cause of Garrett's death, either solely or concurrently with an intervening cause? Much has been written in the decision of this state on proximate cause. The subject calls for correct application to the facts, not for further dissertation. We will refer to a few of the decisions which we believe are most applicable to the facts of this case.

In Franklin v. Houston Elec. Co., Tex.Civ.App., 286 S.W. 578, 580, it is said: "It has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again."

In St. Louis & S. F. Ry. Co. v. Williams, Tex.Civ.App., 37 S.W. 992, 993 (Writ of error denied by Supreme Court), the facts show that the deceased while drunk and boisterous was put off the train about dark at Arthur, a place of about 75 or 100 inhabitants; that he walked up the railroad track or beside it for about 200 yards beyond the place where he was put off the train, and was there struck by another train of the defendant and killed. The court reversed the case because of an erroneous charge, but in doing so had the following to say: "As the judgment must be reversed for the errors above indicated, we deem it proper to say that, in our opinion, the evidence is insufficient to show that the death of the deceased was the 'natural and probable consequence' of his expulsion from the train. Under the circumstances it could not have been reasonably anticipated by the conductor at the time of the expulsion that the deceased would crawl upon the track, and there remain in the manner he did, and be killed by another train."

It occurs to us that the death of the deceased occurring on the defendant's railroad track only 200 yards from the place where he was ejected from the train was much more a "natural and probable consequence" of his expulsion from the train than is the death of Garrett five or six miles from where he was put off of the bus, on a highway not under control of the appellee, by no agency of the appellee, and by some person and vehicle to the appellants unknown.

In Chicago R. I. & G. Ry. Co. v. Sears, Tex.Com.App., 210 S.W. 684, the facts show that Sears, a passenger, while insane, left the train and was killed by another train of the defendant the next morning about two miles north of where he got off. The operatives of the train on which he was a passenger knew that he was deranged, but there was nothing in his conduct to indicate that he was dangerous to others or was likely to injure himself. He had given no intimation of a desire to injure himself voluntarily. In that case it was held that the servants of the defendant could not reasonably anticipate that he would voluntarily injure himself; that the evidence did not show that he was injured by being permitted to leave the train at a dangerous place or under dangerous conditions that the only danger to which he was subjected was the danger of voluntarily injuring himself, and he would probably have been subjected to this danger if he had been carried to his destination or if he had never taken passage on the train; that the deceased was not a passenger at the time of his injury; and that the injury was not a natural and probable consequence of any negligence of the defendant, and could not reasonably have been foreseen in the light of attending circumstances. The judgment in favor of the plaintiff, which had been affirmed by the Court of Civil Appeals, was reversed and rendered.

In Panhandle & S. F. Ry. Co. v. Sledge, Tex.Civ.App., 31 S.W.2d 146, 149, the court said: "To be a proximate cause, the negligence complained of must be such that by the usual and natural course of events the injury would reasonably be anticipated. Consequences which are only possible are not to be held as usual, natural, or even probable." And the court used this further expression: "A prior and remote cause cannot be made the basis for an action for damages if it did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if the injury is the result of some other cause which reasonable minds would not have anticipated, even though the injuries would not have happened but for such condition. The danger or apparent danger must exist in the condition itself."

In that case judgment for plaintiff was reversed and rendered. The Supreme Court granted a writ of error, but in Tex.Com. App., 45 S.W.2d 1112, the judgment of the Court of Civil Appeals was affirmed, and the Commission of Appeals in that connection said: "We have carefully read and considered said opinion, and think it correctly disposes of this case, and for correct reasons given."

In Hunt v. Dixie Motor Coach Corp., Tex.Civ.App., 187 S.W.2d 250, 252 (writ of

error refused for want of merit), this court passed upon a case quite similar in pleadings as the subject case. The same, or practically the same exceptions were leveled against the petition and sustained. We will not extend this opinion by stating the allegations at length. It was another case of where a drunken man bought a ticket for transportation on a bus. He was refused admittance by the bus driver, and thereafter he was forcibly ejected from the bus station by the defendant's agents, servants and employees. About two miles away and on a highway, he was struck by an automobile and killed. We refer to that case for a full statement of the pleadings. Justice Williams of this court held under authority of the Sledge case and the Williams case, supra, that "this injury so suffered not upon defendant's premises or in close proximity thereto but upon a public highway two miles away is not under the circumstances as pleaded such as might reasonably have been anticipated or foreseen by defendant as a natural or probable consequence of its alleged wrongful refusal of passage on the bus to deceased."

■ We can see no material difference in the principles applicable to the facts of that case and to the facts of this case. True, the Hunt case was upon allegations of a willful wrong, while this case is upon allegations of negligence. But the statute, supra, relating to injuries resulting in death permits a suit upon either ground, and the beneficiaries are the same in each instance. In either case the injury resulting in death must have been proximately caused by the wrongful act or by the negligence of the defendant, and as such must be the natural and probable consequences of such wrongful or negligent act.

■ We think we may also say in this case, as Justice Williams did in the Hunt case, that the facts here do not involve an ejectment of a passenger at a dangerous, isolated or unsafe place as is involved in Texas Central R. Co. v. Rose, Tex.Civ. App., 172 S.W. 756. That case is cited by appellants here, as was done in the Hunt case, in support of their contention. The able and distinguished counsel for the appellant urge that it is directly in point. We regret to disagree with them. In that case the plaintiff was put off the train in his drunken condition in a cut with high embankments and with a fence on either side, about 12 feet from a cattle guard. He had to climb the embankment or go over or through the fence or across the cattle guard on the railroad to get to the station, which was a few feet away. While doing the latter he was hit by a train of the defendant and his leg was cut off. On the first appeal, Tex.Civ.App., 161 S.W. 387, the court held that it must be shown that the place where he was put off was one which a prudent person would have considered unsafe. In the second trial that rule was followed, resulting in verdict and judgment for the plaintiff which was affirmed by the Court of Civil Appeals. The case turned upon the finding of fact that the place where he was put off was unsafe. That cannot be maintained in the present case. The allegations show that he was put off at the bus station, which was in a drug store. He was not injured at the place where he was put off nor at a reasonably close place thereto. He was not put off on Highway 271. Appellants do not allege that he walked on the highway to the place where he was found. It is not alleged that he drank any more whiskey. It could not have been reasonably foreseen as a natural and probable consequence of his being put off the bus in the middle of the town, that he would walk or be carried on the highway five or six miles away and there struck by a motor vehicle driven by some unknown person, and not on the premises of the defendant. Taking the allegations of the petition as true, the direct and proximate cause of Garrett's death was being hit by a motor vehicle on a public highway. We can not see that any negligence or wrongdoing of the appellee proximately caused or contributed to cause Garrett's death. As was said in the Sears case, supra, it is not shown that he was killed by being put off the bus at a dangerous place, or under dangerous conditions; that he would probably have been subjected to similar danger of injury from his voluntary acts if he

had been carried to his destination or if he had never taken passage on the bus; and he was not a passenger at the time he was killed.

Appellants also urge that the case of Arlington Heights Sanitarium v. Deaderick, Tex.Civ.App., 272 S.W. 497, is in support of their contention. We do not think so. In that case it was well known to the officials and employees of the Sanitarium that the deceased was insane and the superintendent of the Sanitarium knew that he was shrewd and cunning, and might escape and hurt himself. His escape was the result of negligence of a guard. He roamed at large for about 12 hours without ordinary care being used to discover and recapture him. He had been dead only about 30 minutes when found. We think the facts in that case are too far removed from the facts of this case to be an authority. Nor do we think it was the bus driver's legal duty to place Garrett under guard or in custody of the officers. Hunt v. Dixie Motor Coach Corp., supra.

We have carefully examined all the other authorities cited by appellants but do not find that any of them are close enough in point to determine this case. On the contrary, we believe this case is ruled by the authorities to which we have referred, and that the trial court correctly sustained the special exceptions. We feel impelled to overrule the point of error and to affirm the judgment of the district court.

Affirmed.