Anthony PENALOZA, Appellant,

v.

BAPTIST MEMORIAL HOSPITAL,
Appellee.

No. 3316.

Court of Civil Appeals of Texas.

Eastland.

June 14, 1957.

Rehearing Denied July 12, 1957.

James L. M. Miller, San Antonio, for appellant.

Matthews, Nowlin, MacFarlane & Barrett, San Antonio, for appellee.

LONG, Justice.

Anthony Penaloza instituted this suit against Baptist Memorial Hospital for personal injuries sustained by him as the result

of a potassium permanganate pill being orally administered to him by a nurse in said hospital. Defendant answered that it was a non-profit, charitable hospital duly incorporated as such and at the time plaintiff was a patient in its hospital it was being operated as a non-profit, charitable institution. Defendant specially pleaded its immunity from liability to plaintiff, alleging that it was not liable for the alleged negligent acts of its nurses and employees in the performance of delegable duties, as a matter of law. The parties entered into the following stipulation:

> "The parties hereto by their respective attorneys of record, stipulate and agree that at all times involved in this suit, the Baptist Memorial Hospital was and is a non-profit, charitable hospital or institution, duly incorporated as such under the laws of the State of Texas by filing its Charter in the office of the Secretary of State on March 24, 1948, and that at the time Plaintiff was a patient in said hospital on or about December 19, 1955, said hospital was being operated as a non-profit charitable institution."

Depositions were taken of the plaintiff, the nurse, Maggie Wilson, who administered the potassium permanganate, and Mr. F. R. Higginbotham, the administrator of the hospital. Based upon the stipulation of the parties and the above depositions defendant moved for a summary judgment under 166–A, Texas Rules of Civil Procedure, contending that there were no genuine issues of fact and that as a matter of law defendant was entitled to a judgment. Plaintiff also filed a motion for summary judgment. The court granted defendant's motion for a summary judgment, entered judgment that plaintiff take nothing and overruled plaintiff's motion for summary judgment. Plaintiff has appealed.

By his first three points plaintiff contends the court erred in granting defendant's motion for summary judgment because there were the following issues of fact: (1)

whether defendant was negligent in the selection of Maggie Wilson to administer medicine to the patient; (2) whether defendant was negligent in failing to label the medicine administered to plaintiff with the warning "not to be taken internally" and (3) whether defendant was negligent in allowing the commingling of medicines prescribed for plaintiff not to be taken internally with medicines to be taken internally, without clearly distinguishing one from the other. We find no merit in these points and they are overruled.

The evidence discloses that on December 12, 1955, plaintiff was admitted to the Baptist Hospital in San Antonio as a paying patient. Plaintiff at that time had a skin rash or fungus growth on his feet and lower legs. The doctor attending plaintiff prescribed a daily bath of plaintiff's feet in water in which a potassium permanganate pill had been dissolved. On the night of December 19, 1955, the nurse who was the supervisor of the floor on which plaintiff was located made a change of personnel administering medicine to plaintiff. She selected Maggie Wilson, a vocational nurse, to give the 8 o'clock medication on that night. The medicine for plaintiff was kept in a pigeonhole receptacle with his name and room number thereon. There were some pills in this pigeonhole which were to be taken internally and the potassium permanganate pill which was to be used externally. These pills were kept in separate containers. The box containing the potassium permanganate pills was plainly marked "Potassium Permanganate". Maggie Wilson took the pills that were to be taken internally and the pill that was to be used externally to the room of plaintiff and administered all of said pills to him internally. As a result of plaintiff's taking the potassium permanganate pill he became ill and vomited. His doctor was immediately called and he pumped the plaintiff's stomach.

It is the well settled law of this state that a charitable hospital is not liable for in-

juries to its patients sustained as a result of the negligence of its employees unless the hospital failed to exercise ordinary care in the selection or retention of such employees and this is true without regard to whether the patient was a paying patient or a free patient. St Paul's Sanitarium v. Williamson, Tex.Civ.App., 164 S.W. 36 (Writ Ref.); Enell v. Baptist Hospital, Tex.Civ. App., 45 S.W.2d 395 (Writ Ref.); Steele v. St. Joseph's Hospital, Tex.Civ.App., 60 S.W.2d 1083 (Writ Ref.); Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749; Baylor University v. Boyd, Tex.Civ.App., 18 S.W.2d 700; Jones v. Baylor Hospital, Tex.Civ.App., 284 S.W.2d 929; 9 Tex.Jur. 66.

■ The evidence shows that Maggie Wilson had completed the prescribed course for vocational nurses and had received a license from the State of Texas to practice her vocation. Article 4528c, Vernon's Ann. Civ.St., provides in part that a vocational nurse must be trained to administer medication. She had been practicing her vocation continuously for more than three years. Mr. Higginbotham, the administrator of the hospital, testified that she met all of the technical requirements as a vocational nurse and that he had never received any notice that she was in any way incompetent prior to the administration of the potassium permanganate pill nor at any time subsequent thereto. We hold that there is no issue of fact as to whether the defendant was negligent in the selection of Maggie Wilson to administer medicines to plaintiff.

The evidence is uncontroverted that the potassium permanganate was prescribed for the plaintiff by a qualified physician; that the prescription was filled in the hospital pharmacy. The nurse Maggie Wilson testified that she knew what potassium permanganate was and that it should not have been administered internally. She testified that it was clearly marked on the box in which it was contained "Potassium Permanganate". There was no evidence that potassium permanganate should be or usually is marked "not to be taken internally" when prescribed and administered by qualified hospital personnel. The only witness on the subject was Mr. Higginbotham, the administrator of the hospital, who testified as follows:

"Q. In your experience in any hospital that you have worked in, or this one, has there been any other device to warn of, let's say poisonous medicines, other than just writing it down? A. Any medication that might go out of a pharmacy to be administered by, shall we say a lay person or an actual patient to themselves, would be marked with a sticker indicating poisonous or for external use only.

"Q. Well, is potassium permanganate, to your knowledge, marked with a poison symbol of any kind? A. To my knowledge, no, not when it is used within the hospital."

We hold that there was no issue of fact concerning the marking of the potassium permanganate.

There was no proof that the medicines prescribed for plaintiff were mixed or commingled. The evidence shows that all medication prescribed for each individual patient was segregated in a pigeonhole marked with the name and room number of the patient. The various medicines were not commingled but they were contained in separate boxes, bottles and other containers. There was no evidence tending to show that the placing of an individual patient's medicines in an individual pigeonhole was a dangerous practice. Mr. Higginbotham testified as follows:

"Q. Mrs. Wilson testified that two sedative pills and the potassium permanganate pill were placed in the same box.

"Mr. Barrett: You mean in the same pigeonhole?

"Mr. Miller: Same pigeonhole.

206

"Q. In order to save time, I am sort of stating what Mrs. Wilson said so you will understand the situation. A. Yes, sir, that isn't at all unusual.

"Q. Now, that means that pills to be taken orally were in the same place, box or pigeonhole, with pills which were not to be taken internally? A. In the same pigeonhole, quite probably.

"Q. It was labeled differently, we will admit that. Now, in your opinion did that not create a dangerous possibility? A. No."

By his fourth, fifth, sixth and seventh points plaintiff contends the trial court erred in overruling his motion for summary judgment. By his fourth point he asserts that the uncontradicted testimony that the nurse gave plaintiff a harmful and poisonous medicine which was not to be taken internally convicted the defendant of violation of a non-delegable duty. This point is overruled. We hold that administration of the medicine by the nurse Maggie Wilson was a delegable duty. Administration of medicine in a hospital is the function of the nurse. The Board of Directors and the administrator of the hospital are not competent to administer medicine. In fact, they have no legal authority to do so.

By his fifth point plaintiff contends that the failure of the defendant to provide plaintiff with proper and safe medicines prescribed by plaintiff's doctor was the violation of a non-delegable duty. This point cannot be sustained. There is no proof that the potassium permanganate prescribed for plaintiff was an improper and unsafe medicine. It is conclusively shown that said medicine was mistakenly administered internally by the nurse Maggie Wilson. The evidence shows that the medicine was prescribed by Doctor Gossett and delivered by the hospital's pharmacy. The prescribing of the medicine and the filling of the prescription was a delegable duty. The

Board of Directors and the administrator of the hospital were not authorized to write prescriptions for patients, neither had they any authority to fill such prescriptions. The hospital had fulfilled its duty when it made available the proper medication prescribed by a competent physician. When the nurse by mistake misapplied the medicine, it was not liable. Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567.

By his sixth point plaintiff says that the failure of defendant's supervising nurse, Yvonne Lundi, to properly instruct Maggie Wilson, a stranger to appellant's medicine, that the harmful and poisonous medicine was mixed with medicine to be taken internally in the plaintiff's medicine receptacle. There was no evidence to show that Mrs. Lundi was negligent in failing to instruct an experienced and licensed vocational nurse as to the method she should follow in administering medicine to a patient.

By his seventh point plaintiff says that the method of selection by Mrs. Lundi of the nurse to administer medicines was negligence of the hospital in the conduct of the institution. We find no merit in these points. As heretofore stated, Maggie Wilson was a trained vocational nurse, who had been administering medicine for a period of three years. There had been no complaint as to her ability as a nurse, Mrs. Lundi could not foresee that a vocational nurse would administer internally a pill that was supposed to be administered externally. The nurse Maggie Wilson was qualified and competent to give medicine and was familiar with the hospital's method of administering medicine. Mrs. Lundi knew that Maggie Wilson was competent and qualified and was not negligent in assigning her to administer the medication to plaintiff. We have carefully examined all of the points of error raised and find no merit in any of them. The judgment is, therefore, affirmed.