B. J. DAVIDSON, Appellant,

v.

**METHODIST HOSPITAL OF DALLAS,**
Appellee.

No. 15842.

Court of Civil Appeals of Texas.

Dallas.

June 23, 1961.

Rehearing Denied July 21, 1961.

Gerald T. Waters, Hartson, Waters & Bonnett, Dallas, for appellant.

Leachman, Gardere, Akin & Porter, and Edward E. Crowell, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellant, B. J. Davidson, brought suit against Methodist Hospital of Dallas, a charitable corporation, for damages because of personal injuries sustained by his wife, Mrs. Irma Davidson, while an obstetric patient in the hospital.

Among other allegations appellant pled that the hospital through its managers, officers, and vice-principals was negligent in providing for Mrs. Davidson's use a transfer cart (1) with a top which was separate and detachable from the carriage, and (2) without a brake. A jury answer in the negative as to No. (1) above, but found with reference to No. (2) that the hospital was negligent in providing a transfer cart without a brake and that such negligence was a proximate cause of Mrs. Davidson's injuries. Damages were found in the amount of $6,000.

Appellant filed a motion for judgment based on the jury verdict. Appellee filed a motion for judgment non obstante veredicto. Appellant's motion was overruled. Appellee's motion was sustained, and judgment was accordingly rendered that appellant take nothing.

In two points on appeal appellant asserts in substance that it was error for the court (1) to overrule appellant's motion and (2) to sustain appellee's motion for judgment non obstante veredicto.

Appellant concedes that in Texas a charitable corporation is not liable for the negligence of an employee, provided the corporation itself is not negligent in the hiring or retention of such employee. Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749; Penaloza v. Baptist Memorial Hospital, Tex.Civ.App., 304 S.W.2d 203.

However appellant relies on the rule of law that a charitable corporation is liable for its own corporate negligence in the performance of a non-delegable duty, as distinguished from employee negligence (respondent superior); and contends that in this case appellee is liable because of the negligence of its officers or managing directors in selecting or supplying a transfer cart without mechanical brakes for the use of appellant's wife when she was transferred to the delivery table while in labor.

We agree with appellant that a charitable corporation is liable in damages for personal injuries of a patient proximately caused by the corporation's negligence in the exercise of its non-delegable duty to select and supply proper equipment for the patient. Southern Methodist University v. Clayton, supra; Medical & Surgical Memorial Hospital v. Cauthorn, Tex.Civ.App., 229 S.W.2d 932; Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567.

In order to determine whether the facts of this case bring it within the rule of law above stated we must carefully examine the evidence in the record before us. In doing so it is our duty to view the evidence in a light most favorable to appellant in order to determine whether there is any evidence of probative value to support the jury's answers. It is only when there is no evidence of probative value in support of the jury verdict that a judgment non obstante veredicto can be allowed to stand. Martinez v. Welcome, Tex.Civ.App., 335 S.W.2d 254; Zachry v. McKown, Tex.Civ. App., 326 S.W.2d 227–229; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224.

The material evidence is undisputed. Mrs. Davidson, 34 years of age, weighing more than 259 pounds, was admitted to the hospital on February 13, 1959 to give birth to her seventh child. On the night of February 14, 1959 it had become apparent that the baby was about to arrive, so a transfer cart was brought by two nurses to Mrs. Davidson's bedside to transport her from a labor room to a delivery table in another room. The transfer from her bed to the cart was accomplished without mishap. When the transfer cart with Mrs. Davidson on it arrived beside the delivery table it was pushed into a position flush beside the delivery table. Mrs. Davidson upon request of one of the nurses then started to move from the cart onto the delivery table. When she reached the edge of the cart and was about to move onto the delivery table, the detachable top of the cart separated from the undercarriage, and the undercarriage, which was on rotating wheels, moved away from the delivery table. As a result the top part, which had legs but no wheels, fell to the floor with Mrs. Davidson on it. There was not sufficient time left to lift Mrs. Davidson back on the delivery table for the baby was arriving. The baby was born on the top, or stretcher part of the cart about a minute after the fall. The baby was not injured.

Two trained nurses transported Mrs. Davidson from the labor room to the delivery table. They were in attendance at all times. One of them was at the head of the transfer cart pushing it and the other was at the foot pulling it. After the cart came to a standstill beside the delivery table and while Mrs. Davidson was moving from the transfer cart toward the delivery table, the nurses held onto the top part of the cart, but did not hold onto the whole cart, including the carriage. They both testified that they did not know that the top and the undercarriage were separate and detachable.

There were other carts in use in other departments of the hospital, some of them without brakes and some of them equipped with foot brakes. This particular transfer cart had been in constant use in the O. B. Department at least since 1951. It was the only transfer cart ordinarily used in that department. An average of 3500 babies per year had been born since 1951 at Methodist Hospital, and in each instance the mother had used this same cart. Some of the mothers were as heavy or heavier than Mrs. Davidson. The cart was in good running condition. It was not in defective mechanical condition. There had never before been an accident at Methodist Hospital in transferring a patient to or from the cart.

There was evidence from the vice-president and the regional sales manager of the firm which sold the cart to the hospital. He testified, and his testimony was uncontroverted, that carts of this particular design have been in wide use throughout Texas and the United States over a period of years. It is a combination wheel stretcher and carrier, so that the top can be removed and used as a stretcher if necessary. He had never before heard of an accident of this kind in connection with the use of this type cart.

■ We have concluded that there is no evidence in this record to support the jury's answers to Special Issue No. 2–A to the effect that the hospital's negligence in providing a transfer cart without brakes was a proximate cause of Mrs. Davidson's fall. In reaching this conclusion we have kept in mind the well-established rule of law that foreseeability is a necessary element of proximate cause. Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359, 363; Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355. The court's charge in defining proximate cause properly included foreseeability as a necessary element.

■. What do we mean when we say that foreseeability is a necessary element of proximate cause? We mean this: a wrongdoer is not responsible for a consequence which is merely possible, but is responsible only for a consequence which is probable according to ordinary and usual experience. This has been held in many cases and by respected authorities. Texas & Pacific Ry. Co., v. Bigham, 90 Tex. 223, 38 S.W. 162; Panhandle & S. P. Ry. Co. v. Sledge, Tex. Civ.App., 31 S.W.2d 146, 149 (affirmed Tex. Com.App., 45 S.W.2d 1112); Bledsoe v. City of Amarillo, Tex.Civ.App., 143 S.W.2d 215, and cited cases; Garrett v. Waits Bus Lines, Tex.Civ.App., 229 S.W.2d 381; Dallas Ry. & Term. Co., v. Hendrix, Tex. Civ.App., 261 S.W.2d 610; Mabry v. Lee, Tex.Civ.App., 319 S.W.2d 125; 30–B Tex. Jur. 216–220; 38 Am.Jur. 712.

We think the holding in Baptist Memorial Hospital v. Marrable, Tex.Civ.App., 244 S.W.2d 567, is applicable here. In that case the patient in a semi-conscious condition was placed in a bed with no sideboards. He fell from the bed and died from injuries sustained in the fall. His wife had requested a bed with sideboards. The hospital had provided detachable sideboards which were stored in the basement. The nurses could have obtained them and attached them to the patient's bed. The court held that the hospital had discharged its non-delegable duty to furnish proper equipment.

In the instant case Methodist Hospital had available transfer carts which were equipped with brakes. The testimony of the nurses is that one of the carts from another department, a cart with brakes, could have been used if needed.

We find no evidence that Methodist Hospital ought reasonably have foreseen or anticipated that Mrs. Davidson would probably fall from the transfer cart because it had no brakes. All the evidence is the other way. Many thousands of obstetric patients had used this very transfer cart at Methodist Hospital during the years 1951–1959. Some of these patients were heavier than Mrs. Davidson. The cart was in excellent condition. It was of a design

widely used throughout Texas and the United States. The testimony shows that there had never been an accident similar to this one in Methodist Hospital. An official of the firm which distributes hospital equipment, including transfer carts of this design, stated that he had never before known of a fall similar to Mrs. Davidson's from a transfer cart of this design.

In view of the undisputed evidence in this case we hold as a matter of law that there is no basis for a finding that Methodist Hospital ought reasonably to have foreseen in accordance with ordinary and usual experience that Mrs. Davidson would probably fall from the transfer cart because the cart was not equipped with brakes.

Appellant's points on appeal are overruled. The judgment of the trial court is affirmed.