Ralph E. TUNNELL et ux., Appellants,

v.

OTIS ELEVATOR COMPANY et al.,
Appellees.

No. 7451.

Court of Civil Appeals of Texas.

Amarillo.

March 22, 1965.

Rehearing Denied March 21, 1966.

Huff & Bowers, Lubbock, for appellants.

Crenshaw, Dupree & Milam, Evans, Pharr, Trout & Jones, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal by Ralph E. Tunnell and wife, Myrtle L. Tunnell, from a summary judgment granted the Northwest Texas Conference of the Methodist Episcopal Church and from a judgment in a case tried to the jury and after the evidence was completed withdrawn from the jury and the judgment rendered by the court for Otis Elevator for the reason that "the facts and law, are with Otis Elevator Company." The defendants were sued jointly by the Tunnells, who alleged personal injury to Mrs. Tunnell in an Otis manufactured automatic operating elevator being operated as equipment in the Methodist Medical Building. The summary judgment and the judgment for the elevator company were rendered as one Final Judgment for the defendants below and against the Tunnells.

The Tunnells will be referred to hereafter as Tunnell or appellant, Otis Elevator Company as Otis, and the Methodist Medical Building as Methodist, the record showing it is owned by the Northwest Texas Conference of the Methodist Episcopal Church.

Methodist insists a summary judgment was rendered for them on November 4, 1963; that it constitutes a final judgment from which no appeal was perfected and that this appeal as to them should be dismissed.

From our view of the case as a whole, the question on the motion to dismiss becomes immaterial and would only unnecessarily extend this opinion to write on the question.

The first attack made on the judgment summarily rendered is that the trial court erred in applying the charitable immunity doctrine.

The record shows Methodist Hospital in Lubbock is operated by a board of trustees duly elected at and by the Annual Conference of the Northwest Texas Conference of Methodist Episcopal Church, which owns both the Methodist Hospital and the Methodist Building; that both are operated and managed by such board, the administration of which hospital and building are under one administrator. Though operated as an adjunct of the hospital and the accounting kept separate from that of the hospital, it still is uncontradicted in the record that it is a non-profit operation of the named church and that if any profit is ever made it will, according to the deposition of the accountant for the institution, "go into the repair and replacement of facilities and equipment of either that building or the hospital."

It is also true that offices in the Methodist Building are rented to doctors on the staff of the hospital, but the deposition shows it is "strictly a functional design that is geared for clinic operation" that such tenants facilitate the hospital operation in that the offices of the doctors are directly connected with hospital floors. The deposition of the hospital accountant shows that plans are projected for hospital facilities in the Methodist Building itself and at that time and at all times "We try to have located in that building those people which facilitate our hospital operation."

The motion for summary judgment alleged: "That as a charitable entity owned and operated by the Northwest Texas Conference of the Methodist Episcopal Church, and operated in conjunction with the Methodist Hospital, said building and religious organization and association are entitled to immunity from any claims asserted herein for plaintiffs."

█ Appellants cite authorities from other jurisdictions to justify their contention that the Texas position on charitable immunity is an erroneous position and cites some cases from this State with facts not analogous to our own. They admit this court has neither power nor authority to overrule and restate a proposition of law previously announced by our Supreme Court and then urges this court in effect to announce "an enlightened and critical opinion" seeking to influence the Supreme Court on the proposition that the charitable immunity doctrine is outmoded. They then state that the State Supreme Court alone has the power to set aside and repudiate the doctrine. We would agree that either that court or the legislature has such power and not an intermediate appellate court.

Our position on the charitable immunity doctrine was announced recently in Watkins v. Southcrest Baptist Church, Tex., 399 S.W.2d 530. We admitted in effect that some opinions from other jurisdictions argue strongly against the doctrine but followed, as we still feel bound to do, our own Supreme Court.

The case relied on so strongly by appellant as to what the rule of law should be in Texas [1] was taken note of by our Supreme Court in Southern Methodist University v. Clayton, 142 Tex. 179, 176 S.W.2d 749, in discussing the divergence of opinion in our several American jurisdictions, the court saying:

"Some extend absolute immunity, others recognize a limited liability, while a few hold to the doctrine of respondeat superior."

The court then held:

"We must agree, therefore, with the holding of the Supreme Court of South Carolina in the Vermillion case,[2] supra, that no liability exists. As said in that case, 'This rule does not put such charities above the law, for their conduct is subject to the supervision of the court of equity; nor does it deny an injured person a remedy for his wrong. It is merely an exception to the rule of respondeat superior, which is itself based on reasons of public policy. The injured person has his remedy against the actual wrongdoer. It is said, however, that he may be and often is financially irresponsible. But the answer is that the law does not undertake to provide a solvent defendant for every wrong done. There are many cases of wrongful injury not compensated, because the wrongdoer is insolvent. * * * Questions of public policies must be determined upon considera-

1. President and Directors of Georgetown College v. Hughes, United States Court of Appeals, District of Columbia, 76 U.S. App.D.C. 123, 130 F.2d 810.

2. Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649.

tion of what on the whole will best promote the general welfare.'

\* \* \* \* \* \*

"Therefore, we think sound public policy demands that charity corporations be held immune from liability for the torts of their agents, in the absence of negligence in employing or keeping the latter, whether the injured party be a beneficiary of the trust or a stranger to it, since the result to the charity would be the same in either case."

There is no pleading by appellant nor any point presented upon appeal which asserts negligence of Methodist in employing Mr. Fewell, their employee who caused the action of the elevator upon the occasion in question and from which appellants assert Mrs. Tunnell received her injuries. Therefore, that question was not before the trial court in its consideration of the summary judgment.

Appellant contends that the rule in Southern Methodist University v. Clayton, supra, was not intended to be applicable in a case such as this one because Methodist in this case carried public liability insurance. In Baptist Memorial Hospital v. McTighe, Tex. Civ.App., 303 S.W.2d 446 (N.R.E.), the Baptist Memorial Hospital carried indemnity insurance against injuries similar to the one in the instant case.[3]

The El Paso Court of Civil Appeals in the case just cited said:

"The appellee caused to be introduced in the absence of the jury, an indemnity insurance policy purporting to protect the defendant from having to pay damages for an accident such as this. We have not found any authority in Texas (although some other courts have made the distinction) where the presence of an insurance policy caused any change in the liability or immunity of a charity insti-

tution. We do not feel that there is any escape from the holding and implication of the Clayton case, and we must hold that it is decisive of the case on appeal here. Southern Methodist University v. Clayton, supra; Vermillion v. Woman's College of Due West, supra; \* \* \*."

Though eleven points were raised by appellant in Baptist Memorial Hospital v. McTighe, supra, the El Paso Court wrote on only one of them; i. e., if recovery could be had against a charitable organization which carried indemnity insurance as in the instant case. The stamp of N.R.E. by the Supreme Court in that case indicates to us that the court is still adhering to the rules announced in Southern Methodist University v. Clayton, supra, and Vermillion v. Woman's College of Due West, supra, even though a charitable institution carries insurance indemnifying against accidents and resultant injuries such as those in the McTighe case and the instant case.

■ Therefore, under the record before us, we feel we are compelled to sustain that part of the final judgment which summarily rendered a take-nothing judgment against appellants' suit as against Methodist.

We now pass to the question of liability of Otis on the "borrowed servant" doctrine.

As previously stated, the court withdrew the case from the jury and rendered judgment for Otis for the reason that "the facts and law, are with Otis Elevator Company."

■ "When questions of law only are involved, a trial court may at the conclusion of the hearing of the evidence take the case from the jury and proceed to render judgment. This may be done on the court's own motion and this power is in no way dependent upon a motion having been filed by a party litigant." Harvey v. Elder, Tex. Civ.App., 191 S.W.2d 686 (writ refused).

---

3. There the claimant slipped and fell while entering the ladies' restroom of the hospital where the floor was higher than the hall from which she was entering, whereas in our case appellant alleged she was injured by the unusual action of an automatic elevator located in the Methodist Medical Building.

The trial court having so disposed of the suit against Otis, we must view the evidence in the light most favorable to the losing party, indulging against the instruction every inference that may be properly drawn from the evidence. Dunagan v. Bushey, 152 Tex. 630, 263 S.W.2d 148.

On the occasion of the alleged Tunnell injury Mr. Fewell was working at Methodist Hospital as Chief Engineer. Mr. Christenson was resident mechanic in Lubbock for Otis, which was under contract with Methodist for servicing their Otis Elevators.

On the date of the alleged injury Methodist had an incinerator for burning refuse with a shaft which went up beside the equipment room in the Methodist Building. A crack had developed in the wall of the equipment room which allowed ashes from the incinerator shaft to escape into such room. About one-fourth of the room was devoted to elevator equipment and about a three-fourths to the other hospital equipment. Mr. Christenson, having observed the crack, asked Mr. Fewell to have the hospital repair it so as to keep the dust and ashes out of the equipment room. Mr. Fewell assured Mr. Christenson the hospital would fix the crack but did not say when. Mr. Christenson then said, "We'd better get this mess cleaned up," and he picked up a broom and started sweeping. Mr. Fewell picked up a paint brush and started to dust the equipment. In doing so he put the brush in or near the governor sheave of the automatic Otis Elevator then not moving. At that time Mrs. Tunnell on the way from a doctor's office in the Methodist Medical Building pressed the button to start the elevator down. The paint brush caught the governor, stopping the elevator suddenly. Mrs. Tunnell's injuries are alleged to have been caused by the action of the elevator, which she testified threw her around violently.

From this fact situation appellants urge that Otis had borrowed Mr. Fewell to assist in work having to do with the elevator operation and under the "borrowed serv-ant" doctrine Otis was liable to appellants for Mrs. Tunnell's injuries proximately resulting from Mr. Fewell having placed the brush in the governor of the elevator, thus causing it to stop suddenly. The court having taken the case from the jury and rendered judgment without any submissions to the jury, the specific contention of appellants is that the court erred in holding as a matter of law that Fewell was not a borrowed servant of Otis.

■ We hold there was not any probative evidence to justify a submission to the jury of any issues on the "borrowed servant" doctrine and that the trial court was correct in so holding.

The testimony of Mr. Scherffius, Christenson's superior, reveals that Otis had extended Christenson no authority to secure help on any job for it except those instances requiring more than one man, such as recabling an elevator, and then only after specific arrangements with Methodist. The record shows Christenson had requested Fewell's presence on the occasion in question only to point out the defect in the wall of the Medical Building belonging to the Hospital, which they agreed to repair.

Mr. Fewell testified, in effect, that on the occasion in question Mr. Christenson did not issue him any instructions and that he was free to go or stay as he pleased.

Thus, the only testimony that would even raise a surmise or scintilla of evidence to justify the "borrowed servant" doctrine was the testimony that "We'd better get this mess cleaned up."

■ Inasmuch as Fewell was a general employee of Methodist, it was the burden of appellants to introduce some probative evidence showing, or from which it could reasonably be inferred, that on the occasion in question Fewell had entered on a special employment for Otis. Producers Chemical Company v. McKay, Tex., 366 S.W.2d 220.

■ "Solution of the question rests in right of control of the manner in which the

employees performed the services necessary to accomplishment of their ultimate obligation." Producers Chemical Company v. McKay, supra.

The record is without contradiction that Christenson had no right of control over Fewell at the time the latter placed the brush in the governor of the elevator.

■ Whether the relation of master and servant existed between Christenson and Fewell at the time in question so as to make the doctrine of respondeat superior applicable depended upon whether Christenson had the right to control Fewell in the detail of the work to be performed in cleaning up the ashes and soot. Texas Co. v. Wheat, 140 Tex. 468, 168 S.W.2d 632; Hilgenberg v. Elam, 145 Tex. 347, 198 S.W.2d 94; Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195 (Comm.App. opinion adopted). The record is uncontradicted that he had no such authority.

Accordingly, the judgment of the trial court is in all things affirmed.

### ON MOTION FOR REHEARING

The original opinion herein was announced on March 22, 1965. On April 7, 1965, the Supreme Court of Texas granted a writ in our case of Watkins v. Southcrest Baptist Church, Tex.Civ.App., 385 S.W.2d 723. A motion for rehearing was filed in the instant case on April 12, 1965. Since the exact same question of charitable immunity was involved and that legal question would admittedly control the case so far as appellant, Northwest Texas Conference of the Methodist Episcopal Church, is concerned, this court concluded it was proper not to pass on the motion for rehearing pending in our court until the Supreme Court made a final disposition of the *Southcrest Baptist Church* case. Their opinion

was delivered on January 5, 1966, by a divided court, affirming this court, and is reported in Vol. 9, Texas Supreme Court Journal, beginning at Page 176. A motion for rehearing was refused on March 9, 1966.

Justice Norvell authored the majority opinion and was joined by four other justices without comment. Justice Walker concurred but announced that as to him " * * * the doctrine of charitable immunity will not be recognized in cases *hereafter arising.*" (All emphases ours.)

Justice Greenhill concurred in the majority opinion but warned all people and institutions relying on the established precedent that the doctrine should be re-examined in light of current conditions.

Chief Justice Calvert, joined by Justice Smith, dissented, stating:

"I would abolish it outright, preferably instanter, without distinction as to the nature or character of the various charitable organizations. I would agree to abolish it prospectively so that liability would attach only in cases *arising hereafter.* Finally, if driven to it, I would abolish it effective upon adjournment of the Regular Session of the 60th Legislature in 1967, thus permitting the Legislature to act in the matter if it wished to do so."

■ By the use of the words, "hereafter arising" and "arising hereafter" used respectively by Justice Walker and Chief Justice Calvert we would assume they had reference to the initiating proceedings in courts of original jurisdiction rather than in those cases arising in their court. In any event, we feel we are obligated to follow the majority. Accordingly, the motion for rehearing is overruled.